# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WALTER BECRAFT, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-17-2894 |
| KINGSLEY KESSIE,[1] | * | |
| Defendant | * | |

## MEMORANDUM OPINION

Walter Becraft, an inmate presently incarcerated at Dorsey Run Correctional Facility in Jessup, Maryland, brought this 42 U.S.C. § 1983 action against Sgt. Kingsley Kessie, alleging that Kessie interfered with Becraft's medical treatment. ECF No. 1.[2] Kessie moved to dismiss the claims or alternatively for summary judgment in his favor. ECF No. 15. Becraft was advised of his right to respond to Kessie's motion (ECF No. 16) but has failed to do so. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, Kessie's motion is granted.

## I.     Background

According to his Complaint, Becraft is a self-described "brittle diabetic." On September 22, 2017, Becraft went to the medical unit to receive his insulin. ECF No. 4 at p. 7. Because his blood sugar was low, "medical told [him] to go eat at the kitchen." *Id*. At the cafeteria, Kessie refused to allow Becraft to eat and directed him to leave the table. *Id*. Becraft "refused to leave the table because [he] was falling out, and [he] was drinking juice to bring [his] sugar up." *Id*. Kessie ordered Becraft to stop drinking and leave the cafeteria, orders which, in Becraft's view,

---

[1] The Clerk shall amend the docket to reflect the correct name of Defendant.

[2] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

put his life in danger. *Id*. Consequently, Becraft received an infraction which amounts to punishment "for having a low blood sugar." *Id*. As relief, Becraft seeks restoration of his good conduct credits, outside clearance, back pay, and compensation for the attendant emotional stress. ECF No. 4 at p. 7.

On May 11, 2018, Kessie moved for dismissal or alternatively summary judgment in his favor. Kessie included as record evidence relevant portions of Becraft's medical records, an affidavit of Correctional Dietary Manager Ronald Hale, the Department of Public Safety and Correctional Services' Medical Diet Manual, Becraft's commissary orders, records regarding the rule infraction issued as a result of the September 22, 2017 incident, and a transcript of the rule violation hearing. ECF No. 15-2 (medical records), ECF No. 15-3 (Hale Affidavit), ECF No. 15-4 at pp. 2-19 (medical diet manual); ECF No. 15-4 at pp. 20-44 (commissary orders); ECF No. 15-4 at pp. 45-55 (rule infraction records); ECF No. 15-5 (medical records); ECF No. 15-6 (transcript of rule violation hearing). The following summarizes the pertinent facts taken from these records.

Becraft is a chronic care clinic patient regularly seen by medical staff at the prison to treat and manage his diabetic condition. ECF No. 15-2. The medical staff have provided Becraft education and nutrition counseling to manage his type II diabetes, afforded a 2400 calorie diabetic diet, prescribed medication, and monitored Becraft's blood glucose levels daily.[3] ECF Nos. 15-2, 15-5. Previously, when Becraft went to medical unit with low blood sugar, medical personnel provided him food or glucose in the medical unit, then rechecked his blood sugar before releasing him. ECF No. 15-2 at p. 33; ECF No. 15-5 at pp. 5, 36, 38. The records do not reflect that Becraft's blood glucose was checked on September 22, 2017, as he alleges. ECF No. 15-2 at p. 2 (record of glucose monitoring from 8/10/2017-10/01/2017).

---

[3] On nine separate occasions, Becraft did not attend go to the medical unit for routine blood glucose checks. *See, e.g.*, ECF No. 15-2 at p. 12 (noting 9 instances of "no show" from April 9, 2017 to July 25, 2017).

On September 5, 2017, Becraft was granted permission to carry snacks with him at all times to combat his low blood sugar. ECF No. 15-2 at p. 39. Per medical unit protocol, an inmate prescribed a diebetic snack bag receives the bag every day during the dinner meal. ECF No. 15-3, ¶ 2. The inmate is permitted to have the bag in the dormitory so that he may eat when necessary. *Id*. Additionally, Becraft's prison commissary orders during that time reflect regular purchases of sugary snacks such as cookies, candies, danishes, and doughnuts. ECF No. 15-4 at pp. 20-27.

On September 22, 2017, Kessie issued to Becraft a Notice of Inmate Rule Infraction. ECF No. 15-4 at p. 45. Under the penalties of perjury, Kessie attested that he was the assigned duty officer monitoring inmate movement during dinner. As Kessie sat inmates, he assigned Becraft a seat which Becraft refused to take. *Id*. Becraft told Kessie that he was diabetic and was not going to sit anywhere other than a seat in the front row. *Id*. Another inmate joined the protest, also refusing to sit in his assigned seat, thus "throwing the entire dining room into chaos." *Id*. Becraft then ignored Kessie's direct orders, and remained standing in the middle of the front row, holding his food tray until his desired seat became available. Becraft and the other disruptive inmate then sat at the front row table. *Id*. Both inmates were charged with violating rules 100 (engaging in a disruptive act), 312 (interfering with or resisting the performance of staff duties), 400 (disobeying an order), and 402 (being in a location without authorization).

Becraft was served with the notice of rule violation and a hearing was held on September 25, 2017. ECF No. 15-4 at pp. 48-49. Becraft waived representation and the calling of witnesses. ECF No. 15-6 at p. 2. Kessie's report was read into the record. ECF No. 15-4 at p. 50; ECF 15-6 at p. 3. Becraft testified that he had gone to get his insulin and he had "so long before the insulin kicks in, to eat." ECF No. 15-6 at p. 3. Becraft explained that the dining hall was in chaos because Kessie had initially shut down the cafeteria medical line then reopened it. *Id*. Becraft testified

3

that even though Kessie told him to return to his unit until the line reopened, Becraft went back because he "had to eat." *Id*. Becraft started shaking, and other inmates gave him juice to bring his blood sugar level up. ECF No. 15-4 at pp. 50-51; ECF No. 15-6 at p. 3. Becraft admitted that he sat down nearest to where the juice was dispensed because access to juice "was saving [his] life." ECF No. 15-6 at p. 3. Becraft described the situation as "chaotic" because Kessie was screaming and inmates crowded the area. *Id*.

The hearing officer ultimately found Becraft guilty of violating rules 312, 402 and 400. ECF No. 15-4 at p. 51; ECF No. 15-6 at p. 4. As a sanction, Becraft lost 10 days of good conduct credits. ECF No. 15-4 at p. 52; ECF No. 15-6 at p. 5.

The Court now turns to the sufficiency of Becraft's claims.

## II. Standard of Review

Where, as here, the parties submit evidence beyond the four corners of the Complaint, the Court may treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" means that the nonmoving party must be aware that the court may treat the motion as one for summary judgment and "be afforded a reasonable opportunity for discovery" if necessary to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). To do so, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition" without formal discovery, or otherwise put the district court on notice of the reasons why summary judgment is premature. Fed. R. Civ. P. 56(d). *See also Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).

The Court treats Kessie's motion as one for summary judgment. Becraft knew from the motion itself that Kessie sought summary judgment. Moreover, Becraft has not requested additional discovery under Rule 56(d) or otherwise asked to take formal discovery prior to resolution, and the submitted record evidence appears to include Becraft's prison medical records related to this action. Construing the motion as one for summary judgment is therefore appropriate.

Summary judgment shall be granted if the moving party demonstrates that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F. 3d 514, 522 (4th Cir. 2003). The nonmoving party bears the burden of showing the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it may "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

The Court reads Becraft's pleadings generously, as he proceeds pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F. 3d at 526 (internal quotation marks omitted).

**III.    Analysis**

### A. Interference with Medical Care[4]

Becraft's claim regarding Kessie's refusal to allow him juice implicates his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. Viewing the facts most favorably to Becraft, his claim fails. To sustain an Eighth Amendment claim based on denial or interference with medical care, a plaintiff must demonstrate that Defendant's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted."

---

[4] The Court does not view Becraft's Complaint, even liberally construed, as challenging his conditions of confinement. Accordingly, the Court does not reach Kessie's motion as to the sufficiency of such a claim.

*See Farmer*, 511 U.S. at 844.  "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result."  *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Although this Court cannot make credibility determinations at the summary judgment stage, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  Becraft's claim centers on Kessie's interference with Becraft's access to juice to combat his low blood sugar.  However, no medical evidence supports that on September 22, 2017 Becraft's blood sugar was low, or that medical directed Becraft eat at the dining area.  Additionally, the record evidence demonstrates that whenever Becraft presented with low blood sugar to the medical, the medical unit provided him food or insulin.  No contemporaneous medical records reflect any instance in which the medical unit directed Becraft to eat at the cafeteria as treatment for his condition.  Becraft also had a snack bag allowance and access to additional snacks via his commissary purchases.  And, in contrast to the Complaint, Becraft did not testify during the adjustment hearing that medical staff had directed him to the cafeteria.  In this circumstance, the record evidence blatantly contradicts any notion that Kessie denied Becraft access to medically necessary food or drink.

That said, viewing the facts most favorably to Becraft, at worst Kessie briefly delayed Becraft from drinking his juice when Becraft needed it.  "[D]elay in providing treatment does not violate the Eight Amendment where the seriousness of the injury is not apparent."  *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 124, 1126 (D. Md. 1980).  On this record, Becraft asserts

7

that he was shaking when Kessie denied him juice, but does not detail any other physical symptoms. This singular, and short-lived shaking episode, without more, does not rise to the level of a serious injury sufficient to sustain an Eighth Amendment claim.

Alternatively, no evidence supports that Kessie acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Nothing in the record, construed most favorably to Becraft, supports Kessie's callous disregard for a serious medical need. *See Estelle*, 429 U.S. at 105-06. Rather as Becraft testified, the dining area was in chaos and Becraft refused to follow Kessie's instructions. Without more, Kessie cannot be said to have acted in this fast-moving, fluid situation with purposeful disregard for Becraft's serious medical need. Accordingly, Kessie's motion for summary judgment is granted.

### B. Due Process

To the extent Becraft alleges a denial of due process arising from the disciplinary proceedings, his claim likewise fails. To be sure, where an inmate faces loss of good conduct credits, he is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974). These protections include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id*. at 540, 564, 570-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence". *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Viewing the record most favorably to Becraft, he received all the process he was due. Becraft was given advanced written notice of the charges and a hearing during which he waived the right to call witnesses and testified on his own behalf. The hearing officer then rendered a decision based upon the facts as attested in Kessie's sworn notice and Becraft's testimony. No

8

rational trier of fact could find that Becraft was denied due process. Summary judgment is granted in Kessie's favor.[5]

### IV. Conclusion

For the foregoing reasons, Defndant's Motion for Summary Judgment is GRANTED. A separate Order follows.

  2/15/19  
Date

  /S/  
Paula Xinis  
United States District Judge

---

[5] Having found no constitutional violation, the Court need not address Kessie's immunity defenses.